FRANK F. FASI *v.* SAMUEL WILDER KING, GOVERNOR, TERRITORY OF HAWAII, EDWARD N. SYLVA, ATTORNEY GENERAL, TERRITORY OF HAWAII, A. D. CASTRO, CHAIRMAN, BOARD OF PUBLIC LANDS, TERRITORY OF HAWAII, AND MARGUERITE K. ASHFORD, COMMISSIONER OF PUBLIC LANDS, TERRITORY OF HAWAII.

NO. 3072.

Argued September 6, 21, 1956.      Decided October 4, 1956.

RICE, C. J., MARUMOTO, J., AND CIRCUIT JUDGE TASHIRO IN PLACE OF STAINBACK, J., DISQUALIFIED.

462

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by plaintiff from an order revoking the prior order of the court on plaintiff's motion for issuance of temporary restraining order and an order dismissing plaintiff's complaint on motions to dismiss filed by defendants and intervener.

On August 9, 1955, the commissioner of public lands published notice of sale of two lots of public lands in Honolulu, designated as parcels 5 and 6 of Keehi Industrial Lots, at public auction to be held on October 10. Upset prices were $100,000 for parcel 5 and $300,000 for parcel 6. Purchase prices were payable in cash or twenty per cent down and balance in sixteen equal quarterly installments with interest at the rate of four per cent per year on unpaid principal balances. Both parcels were restricted to industrial use for ten years from the date of issuance of land patent grants. Successful bidder for parcel 5 was required to construct buildings and improvements thereon costing not less than $100,000 within three

years from the date of sale and furnish the commissioner within thirty days from the date of execution of special agreement of sale a bond in the sum of $50,000 to guarantee the expenditure for such buildings and improvements. Successful bidder for parcel 6 was required to construct buildings and improvements thereon costing not less than $400,000 within two years from the date of sale and furnish the commissioner within thirty days from the execution of special agreement of sale a bond in the sum of $200,000 to guarantee the expenditure for such buildings and improvements. The commissioner published the notice after she received a request from Gaspro, Ltd., to offer parcel 5 for sale and a request from Foremost Dairies-Hawaii, Limited, to offer parcel 6 for sale.

Previously, on June 30, 1954, the commissioner had offered comparable industrial lands lying directly across Kamehameha Highway from parcels 5 and 6 for sale at public auction. These lands were sold subject to restriction as to industrial use for ten years but without any building and bond requirements. Purchase prices were payable ten per cent down and balance in ten equal annual payments with interest at four per cent per year on unpaid principal balances. Plaintiff purchased a large portion of these lands under special agreement of sale.

Plaintiff alleged that if parcels 5 and 6 were offered for sale on terms similar to the offer of June 30, 1954, he would have bid not less than $110,000 for parcel 5 and $400,000 for parcel 6. He claimed that the terms and conditions imposed on the sale of parcels 5 and 6 were so burdensome and oppressive as to deter public participation in the bidding, thereby depriving the auction of public character and that the effect of such terms and conditions was to enable only Gaspro, Ltd., and Foremost Dairies-Hawaii, Limited, to purchase those parcels.

On the basis of the foregoing facts plaintiff, for himself

and taxpayers and citizens similarly situated, filed a complaint in the court below against the governor, attorney general, chairman of the board of public lands and the commissioner, seeking an order enjoining them from holding the auction sale as published and from ever offering parcels 5 and 6 for sale on the terms and conditions stated in the published notice of August 9. Upon the filing of the complaint Foremost Dairies-Hawaii, Limited, intervened, and defendants and intervener filed motions to dismiss.

On October 10 the commissioner duly postponed the auction sale to October 17. On October 14 the court heard the motions to dismiss but deferred its ruling until October 19. In the meantime, on plaintiff's motion for temporary restraining order, the court ruled that such order would issue subject to the filing of a bond in the sum of $400,000 by plaintiff before the time set for the auction sale. Plaintiff failed to file the bond. Consequently, on October 17 the commissioner proceeded with the auction sale, at which Gaspro, Ltd., was the only bidder for parcel 5 and Foremost Dairies-Hawaii, Limited, was the only bidder for parcel 6. Each bid the upset price for the respective parcel. Immediately after the auction sale, the commissioner executed special agreements of sale with the purchasers.

On October 19, the court held a further hearing on the motions to dismiss the complaint and on the following day entered an order revoking its prior order on plaintiff's motion for issuance of temporary restraining order and an order dismissing the complaint. The complaint was dismissed on the grounds that it failed to disclose justiciable interest in plaintiff to entitle him to relief; that it failed to state a claim on which relief could be granted, and that the transaction sought to be enjoined was consummated and the cause of action, if any, stated in the complaint was moot.

In the complaint, plaintiff set forth two alternate contentions as legal bases for his claim for relief.

His first contention is that the first proviso of section 73 (1) of the Organic Act, on which the commissioner bases her authority to sell parcels 5 and 6, is unconstitutional because it constitutes an unlawful delegation of legislative authority by Congress to the commissioner in violation of Article I, Section 1, of the Constitution of the United States.

His second contention is that, if the proviso is constitutional, the action of the commissioner in imposing the building and bond requirements and the terms of payment as stated in the published notice is void because the commissioner failed to comply with sections 4511 and 4531 of the Revised Laws of Hawaii 1945, which prescribe the authority and procedure to be followed in sales of public lands; violated the equal protection of the law clause of the fourteenth amendment of the Constitution; conferred special privilege upon Gaspro, Ltd., and Foremost Dairies-Hawaii, Limited, contrary to section 55 of the Organic Act; and such action was arbitrary, unreasonable, capricious, discriminatory and an abuse of discretion.

Plaintiff's first contention is without merit. Plaintiff did not argue this point in his opening brief. He only incidentally touched upon it in his reply brief. However, inasmuch as he did not completely waive this contention, consideration may be given to it.

The proviso in question reads as follows: *"Provided, however,* That the commissioner shall, with the approval of said board [board of public lands], sell to any citizen of the United States, or to any person who has legally declared his intention to become a citizen, for residence purposes lots and tracts, not exceeding three acres in area; and that sales of Government lands or any interest therein may be made upon the approval of said board for business

uses or other undertakings or uses, except those which are primarily agricultural in character, whenever such sale is deemed to be in the interest of the development of the community or area in which said lands are located, and all such sales shall be limited to the amount actually necessary for the economical conduct of such business use or other undertaking or use."

By the Joint Resolution to Provide for Annexing the Hawaiian Islands to the United States, known as New-lands Resolution, of July 7, 1898, 30 Stat. at L. 750, Congress accepted the cession by the Republic of Hawaii to the United States of all public lands belonging to the government of the Hawaiian Islands. Thus, upon annexation, all public lands in Hawaii became the property of the United States.

Under Article IV, Section 3, of the Constitution, Congress has the power to dispose of the property belonging to the United States. The power of Congress under this constitutional provision is plenary and without limitation. (*United States* v. *Gratiot,* 14 Pet. 526.) Congressional acts concerning the disposal of public lands are not of a legislative character in the highest sense of the term but are proprietary. Like any private owner Congress may provide when, how and to whom public lands may be sold. (*Camfield* v. *United States,* 167 U. S. 518; *United States* v. *Midwest Oil Company,* 236 U. S. 459.)

Congress enacted the proviso in question in the exercise of this power. It prescribed the main and substantial conditions of disposal, namely, that sales shall be made for business uses or other undertakings or uses which are deemed to be in the interest of the development of the community or area in which the lands are located and that such sales shall be limited to the amounts actually necessary for the economical conduct of such business uses or other undertakings or uses. Within this framework the

commissioner is given the authority to determine the details concerning the execution of this plan of disposal, subject to the approval of the board of public lands. Congressional acts for the disposal of public lands are necessarily general in nature. Grant of authority to local legislatures to implement the congressional plan by making local regulations does not constitute an unlawful delegation of legislative authority. (*Butte City Water Co. v. Baker,* 196 U. S. 119.) There should be no difference in principle when authority is given to a local executive officer to make decisions at the local level within the framework of the congressional plan.

Plaintiff's second contention requires a consideration of the laws governing sales of public lands in Hawaii which were in effect on the date that the commissioner published notice of sale of parcels 5 and 6. Such laws are section 73 of the Organic Act and sections 4511, 4531 and 4565 of the Revised Laws of Hawaii 1945.

Newlands Resolution provided that the existing laws of the United States relative to public lands shall not apply to such lands in Hawaii but Congress shall enact special laws for their management and disposition. Pursuant thereto, Congress provided in section 73 of the Organic Act, as originally enacted on April 30, 1900, that the laws of Hawaii relating to public lands, except as changed by the Act, shall continue in force until it shall otherwise provide. The laws of Hawaii then governing sales of public lands were embodied in sections 169, 177 and 201 of the Civil Laws of 1897. These laws are still in our statutes. Sections 169 and 177 are compiled in the Revised Laws of Hawaii 1945 as sections 4511 and 4531. Portion of section 201 which has a bearing on this case is compiled in such Revised Laws as section 4565.

Plaintiff argues that section 4511 does not authorize the commissioner to impose the building and bond require-

ments and the terms of payment prescribed for parcels 5 and 6.

A study of the language as well as the history of section 4511 and laws in *pari materia* leads to the conclusion that it is within the discretion of the commissioner to impose such conditions.

Section 4511 provides that the commissioner, with the consent of the governor, may sell public lands in such manner as he deems best for the protection of agriculture and the general welfare of the Territory, subject to such restrictions as may be expressly provided by law. The section is derived from section 42 of the Civil Code of 1859, which conferred authority to sell public lands on the minister of the interior. The authority of the minister of the interior under section 42 was a broad one. He had the discretion to determine whether a particular sale of public land would serve the purpose of promoting agriculture and the general welfare of the kingdom. Once he made that decision he could make the sale in such manner as he deemed best for the purpose, subject only to restrictions expressly provided by law. The commissioner now exercises the power granted to the minister of the interior, subject to the same restrictions. What then are the restrictions expressly provided by law to which the commissioner is presently subject? They are contained in the first proviso of section 73 (1) of the Organic Act and section 4531 of the Revised Laws of Hawaii 1945.

The first proviso of section 73 (1) of the Organic Act has been quoted in the earlier portion of this decision. It is an amendment of a proviso in the eighth paragraph of section 73 enacted on May 27, 1910, which read as follows: *"Provided, however,* That the commissioner may, with the approval of said board, sell for residence purposes lots and tracts, not exceeding three acres in area, and that sales of government lands may be made upon the approval of said

board whenever necessary to locate thereon railroad rights of way, railroad tracks, side tracks, depot grounds, pipe lines, irrigation ditches, pumping stations, reservoirs, factories and mills and appurtenances thereto, including houses for employees, mercantile establishments, hotels, churches, and private schools, and all such sales shall be limited to the amount actually necessary for the economical conduct of such business or undertaking."

It appears from House of Representatives Report No. 2462, 79th Congress, 2d Session, accompanying H. R. 3361, which became the second proviso of section 73(1), that the commissioner had imposed building conditions on a sale pursuant to the proviso quoted in the preceding paragraph. The report stated: "The Territory of Hawaii, acting under authority of the Organic Act, sold a piece of land in the industrial area of Honolulu to one of the large canning companies under the condition that within a specified period a warehouse would be constructed on this property." Fully cognizant of this practice of the commissioner, Congress on August 7, 1946, enacted the second proviso, which reads as follows: *"Provided further,* That in case any lands have been or shall be sold pursuant to the provisions of this paragraph for any purpose above set forth and/or subject to any conditions with respect to the improvement thereof or otherwise, and in case any said lands have been or shall be used by the United States of America, including any department or agency thereof, whether under lease or license from the owner thereof or otherwise, for any purpose relating to war or the national defense and such use has been or shall be for a purpose other than that for which said lands were sold and/or has prevented or shall prevent the performance of any conditions of the sale of said lands with respect to the improvement thereof or otherwise, then, notwithstanding the provisions of this paragraph or of any agreement,

patent, grant, or deed issued upon the sale of said lands, such use of said lands by the United States of America, including any department or agency thereof, shall not result in the forfeiture of said lands and shall result in the extension of the period during which any conditions of the sale of said lands may be complied with for an additional period equal to the period of the use of said lands by the United States of America, including any department or agency thereof."

Congress, by thus enacting this second proviso not only ratified the practice of the commissioner in imposing building conditions with respect to past sales but also approved such practice with respect to future sales.

By the Act of July 9, 1952, Congress amended the first proviso to read as it is at the present time. The reason for the amendment is stated in House of Representatives Report No. 1120, 82d Congress, 1st Session, as follows: "The present law is restrictive in that it does not permit the sale of public lands for such purposes as bank sites, hospitals, easements, garages, theatres, amusement centers, and other uses which would tend to aid the economic conduct of modern business. The proposed amendment would permit the Commissioner, with the approval of the members of the Board of Public Lands, to sell to any United States citizen lots and tracts not exceeding 3 acres in area for residence purposes or for business uses and undertakings deemed to be in the interest of the development of the community."

Plaintiff takes the position that this amendment merely enlarges the category of uses for which public lands may be sold and does not authorize the commissioner to specify any particular type of use within the category. In other words, his position is that, whereas under the original proviso the commissioner may specify a particular type of use, such as depot ground, pumping station, factory or

mercantile establishment, under the amendment the commissioner's authority is limited to a determination of use areas, such as areas for industrial use or business use under municipal zoning ordinances, and that the authority does not extend to a determination of any particular type of use in such use area. No such limitation may be read into the amendment. The term undertaking is employed in the amendment in addition to the term use. Undertaking certainly does not mean use area. It means a particular type of use. Furthermore, a sale must be limited to amount necessary for the economical conduct of a business use or other undertaking or use. This limitation implies a sale for a particular type of use or undertaking.

Authority to sell for a particular type of use or undertaking necessarily implies a further authority to impose building conditions or other requirements that will assure the carrying out of the commissioner's determination. It is to be noted that Congress left the second proviso intact. It would logically follow that if Congress intended to take away the authority of the commissioner to prescribe building conditions, it would have repealed the second proviso or at least amended it to confine its application to past sales.

So, in this case, a situation is presented where a prospective purchaser states to the commissioner that it desires to purchase a parcel of land which in location and area is suited for a particular type of use that it is contemplating and that it is willing to make improvements thereon of specified minimum cost. The commissioner determines that the proposal is in the interest of the development of the area in which the land is located. She makes a decision to offer the land for sale. The board of public lands agrees. The decision is not that the sale be made to this prospective purchaser. The decision is that here is a proposal for improvement which is in the interest of the development

of the area; here is a prospective purchaser who is willing to meet the minimum standard of improvement which is deemed desirable by the commissioner and the board; there may be other prospective purchasers who may be willing to exceed that standard; so let the Territory offer the land for sale with conditions to assure that at least that minimum standard will be met.

When a proposal is made containing a certain standard of improvement, the commissioner, as a responsible public official, will be derelict in her duty if she does not prescribe conditions to assure that such minimum standard will be met. Such conditions include not only requirements as to minimum cost of improvements but also requirements as to time of performance and assurance of performance.

The amount of money to be realized is not the sole criterion by which the commissioner is to be guided. Section 4511 requires that sales be made for the protection of agriculture and the general welfare. Agriculture may now be disregarded because the first proviso authorizes only sales of lands not primarily agricultural in character. The same proviso limits the expression general welfare to mean the interest of the development of the area or community in which the lands are located.

Suppose the commissioner agrees with the plaintiff that her authority is limited to the designation of use areas and offers parcels 5 and 6 for sale for industrial use, without any other restriction. That will permit a land speculator to offer the highest bid at the public auction and, after acquiring the lands, subdivide them into lots only large enough to meet the minimum area requirement of the zoning ordinance and sell such subdivided lots to a hodge podge of individual purchasers. There is nothing to prevent such individual purchasers from erecting only rusted corrugated iron sheds or using the subdivided lots as dumping ground for used automobiles which have seen

better days. Such a situation may not be in the interest of the development of the community or area in which the land is located.

The case of *Barber Lumber Co.* v. *Gifford*, 25 Idaho 654, 139 Pac. 557, involved a situation similar in many respects to this case. Under the laws of Idaho, the state board of land commissioners was required to sell public lands and timber thereon in such manner as will secure the maximum possible amount therefor. Barber Lumber Company filed an application with the state board to cut standing timber on 12,000 acres of public land. Pursuant to this application the state board published notice of sale at public auction to the highest bidder, reserving to itself the right to reject any and all bids. At the auction sale Barber Lumber Company bid $100,000 and one Edwin Snow bid $101,000. One of the moving considerations for offering the timber for sale was the proposal by Barber Lumber Company to construct a railroad to the timber land, the immediate operation of the sawmill, and the consequent activity that would result from such railroading and opening of the mill. Edwin Snow was aware of this situation but declined to enter into any definite agreement regarding the construction of a railroad or the cutting of the timber, holding to the position that his bid was a business proposition without reference to any collateral agreements and made simply upon a basis of the timber offered for sale. The state board voted to accept the bid of Barber Lumber Company in consideration of the greatly increased value that would accrue to state lands upon which the timber stood and the enhancement of the value of other state lands and timber in that vicinity by the construction of a standard gauge railroad. In upholding the action of the state board, the court held that the board acts quasi-judicially in accepting or rejecting a bid for state land or timber, that the court should not interfere with the action

of the board in the absence of manifest abuse of discretion, and stated: "Now, if we apply the rules of law above enunciated to the facts of this case, it is clear that the state board has acted in this matter as a man of good business sense and judgment would act in regard to his own affairs. The board had two bidders at said auction sale for said timber, the state retaining the land on which said timber was situated, and it had much other land in the vicinity of said timber, and the state's land, no doubt, would be greatly enhanced in value by the construction of a railroad into the other timber lands of the state. And, too, the construction of a railroad not only will greatly enhance the value of other state lands in the neighborhood of such railroad, but will also add greatly to the value of the taxable property of the state, and if this were a private transaction, upon the state of facts, how would any business man of good sense and judgment, occupying the position of the state, do otherwise than accept said bid of $100,000 for said timber, when evidently such bid would result greatly more to the financial benefit of the state than $1,000." The foregoing reasoning is applicable to this case. Here, on the basis of the conditions imposed by the commissioner, increase in the value of taxable property of $100,000 within three years in one case and $400,000 within two years in the other case is assured. Then, too, the commissioner no doubt considered that such conditions will secure the orderly development of the area, which in turn will increase the taxable value of surrounding lands.

If the commissioner needs any further authority to impose conditions on sales of public lands, such authority is found in section 4565, which provides that the commissioner may sell public lands not under lease upon part credit and part cash, and deliver possession under an agreement of sale containing conditions of residence on or improvement of the premises sold, or of payment by install-

ments or otherwise of the purchase price, or all or any of such conditions. It is argued that the term improvement, as used in this section, does not mean building but an act by which a settler expresses his intention to cultivate or clear lands under homestead and settlement laws. This section is derived from section 17 of the Land Act of 1895. In view of the purposes of the Act and in view of the fact that public lands as defined in the Act did not include town lots, the term originally may well have had the meaning ascribed to it by plaintiff. But public lands as now defined in section 73 (a) of the Organic Act does not exclude town lots and section 4565 applies to all public lands. The term improvement is used in the second proviso of section 73 (1). There it clearly means building. The term as now used in section 4565 should have the same meaning.

Now, we come to a consideration of section 4531. This section provides that, except as otherwise provided, all sales of public lands shall be made at public auction and requires that in case a price has been offered for any land prior to an offer of sale by the commissioner, such price shall be published as the upset price for such land. It is derived from chapter XLIV of the Laws of 1876, which was enacted to prevent improvident bargains and corruption possible under section 42 of the Civil Code. (*Hawaiian Government* v. *Cornwell*, 8 Haw. 12.) It does not conflict with the first proviso of section 73 (1) and still applies to sales of public lands for other than homestead purposes.

Plaintiff argues that the section does not authorize the commissioner to hold an auction sale subject to the terms and conditions complained of, that such terms and conditions chill the bidding and that an auction sale subject to such terms and conditions is not a public auction within the meaning of the section. Plaintiff cites an Idaho case, *Hammond* v. *Alexander*, 31 Idaho 791, 177 Pac. 400, in support of the proposition. That was a case involving

chilling of bidding by collusion among prospective purchasers and is not in point. Answer to plaintiff's argument is found in the case of *Pike* v. *State Board of Land Commissioners,* 19 Idaho 268, 113 Pac. 447, a decision of the same court, which is in point. In that case the state board of land commissioners had leased to Potlatch Lumber Company 23,938.18 acres of land for the purpose of cutting and removing standing timber thereon, subject to the condition that the timber be removed within twenty years and that any timber which remained standing after twenty years would revert to the State. After ten years Potlatch Lumber Company applied to the state board to purchase the land in fee so that it might not be compelled to cut the timber in the limited time that it had at its disposal. It showed to the satisfaction of the board that the sale of the fee would conserve the forests of the State, better protect its watersheds, augment the income of wage-earners, increase transportation facilities, maintain the revenue from taxation, and assure the largest returns to state institutions. The state board thereupon voted to appraise the land and offer it for sale at public auction to the highest bidder. Petitioner filed an application for a writ of prohibition against the state board in which he sought to have the board prohibited from selling the land. He contended that under the state constitution requiring the state board to provide for sale of public lands in such manner as will secure the maximum possible amount therefor, the board could not sell lands that were under lease because it could not reasonably expect competitive bids which would result in bringing the maximum possible amount to the State. In dismissing the application, the court stated: "It may be true that the state cannot in some cases, or possibly in any case, realize the maximum possible amount for lands which have been leased for a long term of years, or at least such an amount as it could realize if the lands were not so leased

and the purchaser could obtain immediate possession. It is self-evident, however, that the lands can be sold at public auction for the 'maximum possible amount' which such lands will bring at that time and under conditions then existing. Of course, they have to be sold under the conditions existing at the time of the sale. It may be considered by some as questionable or doubtful business policy to lease lands for a long period of time, and then undertake to sell the lands a great number of years prior to the expiration of the lease, but however doubtful or questionable the business policy or expediency of so doing may be, it does not affect the power and authority of the board to sell ... It is contended, however, by counsel for the plaintiff that 'an auction is a sale by consecutive bidding intended to reach the highest price of the article by exciting competition for it' (1 Words and Phrases, page 637), and that there cannot be any such thing as a 'public auction' of lands proposed to be sold under the conditions of these lands. This argument seems to us without merit. Property may be sold at public auction to the highest bidder and for the 'maximum possible amount,' although a like public auction under other conditions and at other times might bring many times more and consequently a much larger 'maximum possible amount.' The question as to the most advantageous time to sell timber or lands or lease lands is always one of uncertainty and requires good business judgment to determine it wisely and for the best interest of the state, and however exercised may prove unwise and a positive loss to the state as viewed in the light of subsequent events. These conditions, however, do not change a sale from the character of a public auction to the condition of a private sale or signify that the amount received was not the maximum possible amount that might be received under the conditions existing at the time the sale was made."

This court agrees with the foregoing statement. Congress has directed the commissioner to make sales in the interest of the development of the area in which the lands are located. This direction cannot be ignored. Public auction, subject to the terms and conditions complained of, is a measure to obtain the maximum possible amount of money without ignoring such direction. Such auction is within the spirit and meaning of section 4531.

There remains to be considered the charges that the commissioner's action was contrary to section 55 of the Organic Act, that it violated the equal protection of the law clause of the Fourteenth Amendment, and that it was arbitrary and an abuse of discretion.

A sufficient answer to the charge that the commissioner's action was contrary to section 55 of the Organic Act, which prohibits the granting of special privileges to corporations without congressional consent, is that the section is a limitation on the powers of the legislature and has nothing to do with the authority of the commissioner, even assuming that her action resulted in granting such privileges, which assumption has no basis in fact.

On the question of violation of the equal protection of the laws clause of the Fourteenth Amendment, it is plaintiff's position that even if the commissioner has discretionary authority under the applicable laws she has exercised such authority in a manner so discriminatory as to infringe upon plaintiff's rights. The case of *Yick Wo* v. *Hopkins,* 118 U. S. 356, is cited in support of this proposition. It will be noted that in *Yick Wo* v. *Hopkins,* unjust and illegal discriminations affecting constitutionally guaranteed rights were involved. Such rights were referred to by the court as fundamental rights to life, liberty and pursuit of happiness and also as right to means of living and any material right essential to the enjoyment of life. No such constitutionally guaranteed right is involved in

this case. Right to purchase public land is not a constitutionally guaranteed right. Congress in the exercise of its plenary power over the disposition of public lands may provide for their sale or withhold them from sale.

The charge that the commissioner's action was arbitrary and an abuse of discretion amounts to no more than that this court should substitute its judgment on a matter which Congress has entrusted to the commissioner, subject to the approval of the board. This the court cannot do. The reason is well stated by Chief Justice White in *Dakota Central Telephone Company* v. *South Dakota,* 250 U. S. 163, at page 184, as follows: "But as the contention at best concerns not a want of power, but a mere excess or abuse of discretion in exerting a power given, it is clear that it involves considerations which are beyond the judicial power. This must be since, as this court has often pointed out, the judicial may not invade the legislative or executive departments so as to correct alleged mistakes or wrongs arising from asserted abuse of discretion." In this case, as to imposition of building requirements, the commissioner had two choices, to sell with such requirements or to sell without such requirements. In one case she might have obtained less immediate cash but would have been assured of at least a $100,000 improvement on a one-acre parcel of land within three years and $400,000 improvement on a four-acre parcel of land within two years. In the other she might have obtained more in cash for the Territory but would have risked the development of a Toonerville landscape on a much traveled highway. She chose the first alternative in the light of the congressional mandate in the Organic Act. It is not for this court to say that her choice was wrong. As to the terms of payment of the purchase price, the commissioner could have demanded cash and her action would not have been subject to challenge. Plaintiff has no basis for complaint that she

prescribed payment in four years instead of ten years. If a prospective purchaser proposed payment in four years, the commissioner would not have served the interest of the Territory by prescribing more liberal terms of payment.

Plaintiff failed to state a claim upon which relief could be granted and for this reason the complaint was properly dismissed. In view of this holding, it is not necessary for this court to consider the other grounds for dismissal stated by the court below, nor to review the action of the lower court on plaintiff's motion for issuance of temporary restraining order.

Affirmed.

*J. Harold Hughes* (also on the briefs) for plaintiff-appellant.

*William F. Quinn* (*Robertson, Castle & Anthony* on the briefs) for intervener-appellee, Foremost Dairies-Hawaii, Limited.

*Robert K. Fukuda,* Deputy Attorney General (*Edward N. Sylva,* Attorney General, *Morio Omori* and *Kazuyoshi Akita,* Deputies Attorney General, on the briefs), for defendants-appellees.