(December 19, 1918.)

NORA HAMMOND et al., Plaintiffs, v. M. ALEXANDER et al., as the State Board of Land Commissioners, Defendants.

[177 Pac. 400.]

STATE LANDS—PUBLIC AUCTIONS.

1. It is the duty of the state board of land commissioners to provide for the sale of lands, granted to the state by the United States, under such regulations as may be prescribed by law, in a manner which will secure the maximum possible amount therefor. Such lands are held by the state, in trust, subject to disposal, at public auction, for the use and benefit of the respective objects for which the grants were made.

2. Competition is a necessary element of an auction, and if prospective purchasers enter into an agreement with the purpose to, and which does, stifle competition in bidding, the vendor may avoid the sale.

[As to competition at auction sales and agreement to stifle same, see note in 2 Am. Dec. 138. As to validity of combinations between bidders at tax sale, see note in Ann. Cas. 1913D, 262.]

PETITION for writ of mandate. Alternative writ quashed. Peremptory writ *denied*.

J. H. Peterson, for Plaintiffs.

The mere fact of a combination at a public auction sale is not enough to vitiate the sale. Combination formed with a clean purpose will not vitiate a sale. (*Kearney v. Taylor*, 56 U. S. 495; *Phippen v. Stickney*, 3 Met. (Mass.) 384; *Hopkins v. Ensign*, 122 N. Y. 144, 25 N. E. 306, 9 L. R. A. 731; *Hunt v. Elliott*, 80 Ind. 245, 253, 41 Am. Rep. 794; *Bailey v. Morgan*, 44 N. C. 352; *Martin v. Evans*, 2 Rich. Eq. (S. C.) 368.)

There is nothing, either in law or morals, to prevent parties from uniting together in good faith to purchase property offered at public auction. (*Smith v. Ullman*, 58 Md. 183, 42 Am. Rep. 329; *James v. Fulcrod*, 5 Tex. 512, 55 Am. Dec. 743; *Bellows v. Russell*, 20 N. H. 427, 51 Am. Dec. 238; *Jen-*

*kins v. Frink,* 30 Cal. 586, 89 Am. Dec. 134; 6 C. J. 831; 4 Elliott on Contracts, sec. 2874.)

It is not unlawful for individuals to associate together to purchase public lands for their joint interests. (*Piatt v. Oliver,* 2 McLean, 267, 19 Fed. Cas. No. 11,115.)

The state land commissioner who conducted this sale was, under the pleading, admittedly the authorized agent of the land board and acting within the scope of his authority in selling this land, and therefore his action in consummating this sale is binding upon the state land board. (Mecham on Public Officers, p. 842.)

T. A. Walters, Attorney General, and J. P. Pope, Assistant Attorney General, for Defendants.

The state land board is given a large discretionary power in the exercise of its trust with reference to the sale and disposition of public lands. (*Pierson v. State Board of Land Commrs.,* 14 Ida. 159, 93 Pac. 775; *Balderston v. Brady,* 17 Ida. 567, 107 Pac. 493; *Pike v. State Board of Land Commrs.,* 19 Ida. 268, Ann. Cas. 1912B, 1344, 113 Pac. 447; *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 178; *Barber Lumber Co. v. Gifford,* 25 Ida. 654, 139 Pac. 557.) Their judgment and discretion will not be interfered with in the absence of fraud. (*State ex rel. Gravely v. Stewart,* 48 Mont. 619, 137 Pac. 854.)

The agreement made by the prospective bidders and carried out by them vitiates the sale. (2 R. C. L. 1133; 6 C. J. 830; *Smith v. Greenlee,* 13 N. C. 126, 18 Am. Dec. 564.)

The sale held at Rexburg cannot be upheld as a "public auction." An auction is a sale of competitive bidding instituted to reach the highest price of the article by inciting competition for it. (*Hibler v. Hoag,* 1 Watts & S. (Pa.) 552; *Kline. v. Turner,* 27 Or. 356, 41 Pac. 664.) Anything that stifles or prevents competition at a sale of public lands should vitiate the sale.

MORGAN, J.—On July 10, 1918, the state land commissioner offered for sale, at Rexburg, certain state, common

school, indemnity and lieu lands, situated in Madison county, tracts of which were bid upon by plaintiffs who were declared by the commissioner to be the purchasers thereof. Thereafter the state board of land commissioners declined to recognize the sales as valid, refused to issue certificates of purchase, and returned to plaintiffs the portion of the purchase price paid by them to the commissioner, which they refused to accept.

The purpose of this action is to procure the issuance of a writ of mandate to compel the board to issue to plaintiffs certificates of purchase of the several tracts of land declared by the commissioner to have been sold to them. Upon the filing of the complaint an alternative writ of mandate was issued. The defendants answered and testimony, which is now before us, was taken by a referee, from which the following facts appear:

At the time when and place where the sale had been advertised to be held about 315 people assembled. After the commissioner had read the notice, and as he was proceeding to offer the land, one of the plaintiffs asked that a postponement be had for an hour. This request was granted by the commissioner with the unanimous consent of those present. Thereupon a committee was appointed by the prospective purchasers to devise a plan whereby bids were to be submitted for the purchase of the land. The members of the committee were unable to agree upon a plan, and recommended that the prospective bidders not enter into an agreement with respect to the matter, but that the sale proceed as advertised. This report was not adopted, but the committee was discharged, and, upon a second adjournment being taken, a plan was agreed upon whereby each of those who wished to participate as a purchaser at the sale was to write his name upon a slip of paper and deposit it in a box, and that the slips should then be drawn out and the names numbered consecutively, in the order drawn, and that each person should be entitled to bid upon a quarter-section of the land, as it was offered, according to his number.

Of the persons present, 298 participated in the drawing, one objected to the proceeding, and the remainder neither participated nor expressed any objection. There were 62 quarter-sections of land offered for sale, and those who drew numbers low enough bid the appraised value in the order in which their names came from the box. When a prospective purchaser bid, he did so without regard to which piece of land was being offered, and whether or not he wanted that particular tract.

If anyone bid upon land he intended to purchase when he went to the sale there is nothing in the testimony to indicate it, but it is shown that a number bid upon and were declared to be the purchasers of tracts who had no intention of participating in the sale until the plan for drawing lots had been agreed to. It is also shown that a number of persons present had intended to bid upon certain tracts and did not do so because the numbers they drew were not reached in their order until all the land had been disposed of, and because they felt themselves bound to not bid upon any land until their numbers were reached. The evidence before us admits of no other conclusion than that many persons who had expected to participate as bidders at the sale did not do so because of an understanding among those who participated in the drawing that they were not to bid against each other.

Are these facts sufficient to vitiate the sale and to justify the land board in refusing to issue the certificates of purchase?

Art. 9, sec. 8, of the Idaho constitution, directs that "it shall be the duty of the state board of land commissioners to provide for the . . . . sale . . . . of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law and in such manner as will secure the maximum possible amount therefor; . . . . The legislature shall . . . . provide by law that the general grants of land made by Congress to the state, shall be . . . . held in trust, subject to disposal at public auction for the use and benefit of the respective objects for which said grants of land were made . . . . " Rev.

Codes, sec. 1569, makes it the duty of the state board of land commissioners to cause the land to be appraised, and sec. 1579 prohibits the sale of any land for less than the appraised value, nor for less than $10 per acre.

By reason of the provision of the constitution, above quoted, none of the land in question could be sold except at public auction. In an auction, competition is a necessary element (*Territory v. Toyota*, 19 Hawaii, 651), and the bidders fix, *by competition*, the price at which the offered property is sold. Competition is an element of each offer and bid (*Crandall v. State*, 28 Ohio St. 479), and while all agreements among prospective bidders do not operate to vitiate a sale, if the purpose in so agreeing is to stifle competition and if it causes the property offered to be awarded to a bidder, or bidders, for less than would have otherwise been offered, the vendor may avoid the sale. (6 C. J. 830, 831; *Herndon v. Gibson*, 38 S. C. 357, 37 Am. St. 765, 17 S. E. 145, 20 L. R. A. 545.)

The testimony taken in this case makes it clear that the purpose of plaintiffs, and the others who participated in the drawing, was that each of those whose names were drawn out of the box was to have a preference right, in the order in which his name was drawn, to bid upon a quarter-section of land if his number was reached before all the land was sold.

It is also clear that the general understanding was, although a few persons present might not have so understood, and probably did not so understand, that those who participated in the drawing would not compete in the bidding.

It follows that the land was not sold in the manner required by the constitution, and that it was the duty of the state board of land commissioners to set aside the sale and to refuse to issue the certificates sought to be procured by this proceeding.

The alternative writ of mandate is quashed, and the peremptory writ is denied. Costs are awarded to defendants.

Budge, C. J., and Rice, J., concur.

Petition for rehearing denied.