**Leo SHEPPARD, Plaintiff–Appellant,**

v.

**Arthur N. LEE; Joe Shirley, Jr.; Ambrose Shepherd, Defendants–Appellees.**

**No. 89–16188.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1990.

Decided March 28, 1991.

---

Peter Breen, Navajo Legal Aid and Defender Service, Window Rock, (Navajo Nation) Ariz., for plaintiff-appellant.

Susan M. Freeman, Brian M. Goodwin, Lewis and Roca, Phoenix, Ariz., and Michael O. Miller, Lewis and Roca, Tucson, Ariz., for defendants-appellees.

Before TANG, FLETCHER and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Leo Sheppard is a former employee of Apache County, Arizona, who worked with the road maintenance crew on the Navajo Indian reservation. He was fired by the defendants, who are the members of the Apache County Board of Supervisors, because he filed petitions declaring his intention to run for a seat on the Board. The defendants fired him pursuant to a May 16, 1988, amendment to the Apache County employee rules and regulations which provides that "No employee may remain employed if he offers himself for nomination or election to any salaried Apache County, State of Arizona or Federal elective office unless that office will become vacant at the next election by retirement of the elected official." The Board had unanimously enacted this amendment shortly after Sheppard announced that he intended to run for defendant Shirley's seat on the Board.

Sheppard sued the defendants, alleging that their firing of him in order to maintain their political offices violated the Sherman Antitrust Act, 15 U.S.C. §§ 1–7.[1] He also

---

1. Specifically, he alleged that the defendants' actions constituted a group boycott in violation

asserted a pendent state claim alleging tortious interference with a business relationship. The district court dismissed the action *sua sponte* on the ground that it lacked jurisdiction.

■ Both parties devote the bulk of their arguments on appeal to the questions whether an Indian reservation constitutes a territory of the United States pursuant to the Sherman Act,[2] and whether *local* political activity has an effect on interstate commerce. We need not reach these issues. Rather, we affirm the district court on a more fundamental ground.[3] *See Golden Nugget v. American Stock Exchange*, 828 F.2d 586, 590 (9th Cir.1987). Dismissal of Sheppard's case was proper because neither the business of conducting the government nor the holding of a political office constitutes "trade or commerce" within the meaning of the Sherman Act.[4]

The underlying purpose of the Sherman Act is to promote commercial competition by rendering certain anti-competitive practices illegal. The Supreme Court has explained:

The Sherman Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conducive to the

of section 1 of the Act, monopolization of trade in violation of section 2 of the Act, and attempted monopolization of trade in violation of section 2 of the Act.

Section 1 of the Sherman Antitrust Act reads in relevant part as follows:

**§ 1. Trusts, etc., in restraint of trade illegal; penalty.**

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony....

15 U.S.C. § 1.

Section 2 of the Act reads in relevant part as follows:

**§ 2. Monopolizing trade a felony; penalty.**

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony....

15 U.S.C. § 2.

2. The parties address this question because Sheppard asserts that the district court had jurisdiction pursuant to section 3 of the Sherman Act. That section reads as follows:

**§ 3. Trusts in Territories or District of Columbia illegal; combination a felony.**

Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or of the District of Columbia, or in restraint of trade or commerce between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia, or with foreign nations, or between the District of Columbia and any State or States or foreign nations, is declared illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a felony....

15 U.S.C. § 3.

3. The judge's order did not set forth the reasons underlying its conclusion. It stated only that the complaint was dismissed for lack of jurisdiction. Because the record we have been furnished does not contain a transcript of the hearing at which the judge dismissed the action, we cannot determine whether he offered an explanation of his ruling at that time.

4. Because the substantive allegations of Sheppard's claims are "wholly insubstantial," our holding is jurisdictional. *See Ferguson v. Greater Pocatello Chamber of Commerce*, 848 F.2d 976, 980 (9th Cir.1988) (citing *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). Even if that were not the case, "[i]t is relatively common for courts to render decisions on the merits in antitrust cases notwithstanding uncertain jurisdiction." *Id.* at 981 n. 2 (citing *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 245–47, 100 S.Ct. 502, 510–12, 62 L.Ed.2d 441 (1980); *Ronwin v. State Bar*, 686 F.2d 692, 698–99 (9th Cir.1981) (explicitly stating that the plaintiff had failed to establish jurisdiction but addressing other grounds), *rev'd*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (decision on merits); *Timberlane Lumber Co. v. Bank Of America Nat'l Trust & Sav. Ass'n*, 549 F.2d 597, 602–03 (9th Cir.1977) (defense attacking commerce allegations is not jurisdictional, but on merits)). Thus, whether we characterize our holding as jurisdictional or merit-based, the basis for our affirmance is clearly a proper one.

preservation of our democratic political and social institutions. But even were that premise open to question, the policy unequivocally laid down by the Act is competition.

*Northern Pac. Ry. v. United States,* 356 U.S. 1, 4, 78 S.Ct. 514, 517, 2 L.Ed.2d 545 (1958).

■ The Sherman Act prohibits certain conduct affecting "trade or commerce." Consistent with the statutory purpose of promoting commercial competition, an activity must in some way involve such competition in order to constitute "trade or commerce." *See Klor's, Inc. v. Broadway–Hale Stores, Inc.,* 359 U.S. 207, 213, 79 S.Ct. 705, 710, 3 L.Ed.2d 741 (1959); *United States v. National Ass'n of Real Estate Bds.,* 339 U.S. 485, 492, 70 S.Ct. 711, 716, 94 L.Ed. 1007 (1950). Thus, "[t]he proscriptions of the Act [are] tailored ... for the business world." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 141, 81 S.Ct. 523, 531, 5 L.Ed.2d 464 (1961).

■ Sheppard does not allege that the business of conducting the government involves commercial competition. Indeed, such an allegation would surely fail. The operation of the government is neither a commercial activity nor a competitive one. Government operations may only be carried out by the government, and no rival, would-be government may compete for the oppor-

tunity to perform the governmental function. Governing is by its very nature a non-competitive act. Thus, monopolistic practices with respect to the conduct of government do not violate the Sherman Act.[5]

■ Sheppard seeks to avoid this difficulty by arguing that the holding of the position of County Supervisor itself involves commercial activity, because a County Supervisor receives a salary in exchange for the performance of his duties.[6] *See Goldfarb v. Virginia State Bar,* 421 U.S. 773, 787–88, 95 S.Ct. 2004, 2013–14, 44 L.Ed.2d 572 (1975) (the practice of law constitutes "trade or commerce" because lawyers receive money in exchange for performing services). This argument completely misses the point. *Goldfarb* addressed "the sale of professional services" and stands only for the proposition that the exchange of money for services is a factor in determining whether a particular *activity* constitutes "trade or commerce." It does not stand for the proposition that because an individual receives money for performing his job, the holding of that job in and of itself constitutes "trade or commerce." In fact, the antitrust laws pose no barriers to the suppression of competition for the holding of any particular office or position, elected or otherwise. Thus, the founder of a company may appoint himself

**5.** The business of conducting the government raises different questions from those that arise from the government's involvement in a particular function that may be anticompetitive. Even in the latter instance, however, the restraints on competition may be beyond the reach of the antitrust laws. When a state acts itself, it is exempt from the antitrust laws pursuant to a doctrine of state-action immunity. *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,* 923 F.2d 1378 (9th Cir.1991) (citing *Parker v. Brown,* 317 U.S. 341, 350–52, 63 S.Ct. 307, 313–14, 87 L.Ed. 315 (1943); *Charley's Taxi Radio Dispatch v. SIDA of Hawaii,* 810 F.2d 869 (9th Cir.1987)). When a state delegates authority to a subordinate entity that then acts anticompetitively, that entity is exempt from the antitrust laws if the state legislature has authorized the activity complained of *and* the state intends to displace competition with regulation. *Id.* "[T]he courts are to focus on whether the state's policy is to supplant or support competition in the area of dispute, albeit paying particular at-

tention to the foreseeable or logical consequences of a state's grant to a delegate of broad authority." *Id.* (citing *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985)).

**6.** At oral argument, Sheppard's counsel conceded that the holding of certain political offices, such as those of Mayor or Governor, does not involve "trade or commerce." He distinguished those offices from the position of County Supervisor by labeling the former "honorific" and the latter merely "pecuniary." Counsel appeared to be urging a distinction based on the degree of prestige that attaches to the office. That distinction, however, is irrelevant to the antitrust laws. As we explain *infra,* the holding of an office or position does not constitute trade or commerce; the antitrust laws seek to promote competition in the market for goods and services, not to afford every person a fair opportunity to achieve a particular position or office.

500

CEO for life, a law firm may impose restrictions on who may run for senior partner, and—as in the present case—a Board of Supervisors may disqualify certain persons from running for the position of County Supervisor, all without violating the antitrust laws. Because limiting the opportunity to hold a political office is no more a violation of the antitrust laws than is conducting the government in a non-competitive manner, Sheppard's claim is wholly unmeritorious.

The defendants' actions may well have been illegal; they certainly seem to be inconsistent with our tradition of fair and free elections. The Supervisors' efforts to perpetuate themselves in office and to burden the rights of those who would oppose them are offensive to basic democratic principles. *See Garza v. County of Los Angeles*, 918 F.2d 763, 778 (9th Cir.1990) (Kozinski, J., concurring and dissenting in part) ("[E]lected officials engaged in the single-minded pursuit of incumbency can run roughshod over the rights of protected minorities."), *cert. denied,* —— U.S. ——, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991). Nevertheless, their actions did not constitute violations of the antitrust laws. Accordingly, the judgment of the district court is

AFFIRMED.