**COLUMBIA RIVER PEOPLE'S UTILITY DISTRICT, Plaintiff–Appellant,**

v.

**PORTLAND GENERAL ELECTRIC COMPANY, Defendant–Appellee.**

No. 99–35411.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 2000

Filed July 17, 2000

Thomas A. Balmer, Ater Wynne, Portland, Oregon, for the plaintiff-appellant.

Barbee B. Lyon, Tonkon Torp, Portland, Oregon, for the defendant-appellee.

Before: LAY,[1] TASHIMA and McKEOWN, Circuit Judges.

LAY, Circuit Judge:

Columbia River People's Utility District ("CRPUD") appeals the grant of summary judgment in an antitrust action brought against Portland General Electric Company ("PGE"). The dispute focuses on the right to sell electrical power to the Boise Cascade plant in St. Helens, Oregon. The district court dismissed the case under the rationale that PGE's actions were cloaked with state-action immunity from antitrust violations. CRPUD asserts the district court erred, *inter alia*, that the issue of state-action immunity was not pleaded or briefed by the parties and was otherwise wrongfully applied to the facts and circumstances. PGE argues, on the other hand, that the district court correctly applied the state-action immunity doctrine and, alternatively, urges that CRPUD failed to state a cognizable claim under § 1 of the Sherman Antitrust Act.[2] We affirm the district court on the ground that CRPUD has failed to state a claim under § 1 of the Sherman Antitrust Act.

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

2. Among other issues which PGE injects into the appeal is the question of standing and

## I. Background

In 1961, the Oregon legislature established a regulatory framework that allowed utility providers to allocate customers and territories without violating antitrust laws. *See* Or.Rev.Stat. ch. 758. The statute provides:

> The elimination and future prevention of duplication of utility facilities is a matter of statewide concern; and in order to promote the efficient and economic use and development and the safety of operation of utility services while providing adequate and reasonable service to all territories and customers affected thereby, it is necessary to regulate in the manner provided in ORS § 758.400 to 758.475 all persons and entities providing utility service.

Or.Rev.Stat. § 758.405 (1999). Both parties are "persons" subject to this legislation. *See* Or.Rev.Stat. § 758.400(2) (1999).

Under the state regulatory scheme, a utility that exclusively serves a territory can apply to the Oregon Public Utility Commission ("OPUC") for the exclusive right to serve that territory. *See* Or.Rev. Stat. § 758.435 (1999). Once the OPUC approves this territorial allocation, no other utility can provide service for that territory. *See* Or.Rev.Stat. § 758.450(2) (1999) ("[N]o other person shall offer, construct or extend utility service in or into [a territory allocated by the OPUC]."). The statutory scheme does allow for a local people's utility district ("PUD") to use its condemnation power to take over a private utility's exclusive territory and the facilities used to service that exclusive territory. *See* Or.Rev.Stat. § 758.470(1) (1999). In such case, the PUD "acquire[s] all of the rights of the person whose property is condemned to serve the territory served by the acquired properties." *Id.*

collateral attack of the state court judgment. For the reasons set forth, we need not address these or any issues other than those discussed in our opinion.

Soon after the passage of this regulatory scheme, PGE applied to the OPUC for the exclusive right to serve much of its territory. In 1963, the OPUC approved PGE's application. PGE's territory included the Boise Cascade plant at issue in this case.

CRPUD was organized as a PUD under Oregon law in the 1940s. As a PUD, its territory included much of the territory PGE had the exclusive right to serve, including the Boise Cascade plant. CRPUD was largely a shell organization until 1980, when voters approved a bond measure enabling it to purchase electric utility distribution facilities from PGE. Negotiations between PGE and CRPUD failed, however, and in 1981 CRPUD filed a condemnation action in state court to acquire some of PGE's facilities by eminent domain.

Prior to trial, CRPUD and PGE entered into a settlement agreement. Under their agreement, PGE agreed to sell CRPUD most of the sought-after utility property and territory. In return, CRPUD agreed that PGE would continue to exclusively serve the Boise Cascade plant, but reserved the right to acquire the Boise Cascade facilities in the future for a fixed purchase price of $31+ million. This provision, which CRPUD characterizes as liquidated damages, read in part:

> In the event CRPUD seeks to acquire by condemnation or negotiation the facilities serving or necessary to serve Boise Cascade, or in fact serves Boise Cascade, it is agreed that CRPUD shall pay

PGE the appraised value of said facilities in the amount of $31,710,046.00, which figure shall be escalated annually by an amount based on a mutually acceptable index designed to track inflation.

(CRPUD E.R. at 82 (Stipulated J. ¶ 14).) Shortly after this agreement, CRPUD purchased the utility property from PGE and began providing utility service in the acquired territory.

As a consequence of this transaction, PGE filed applications with the OPUC seeking regulatory approval of the sale of property and transfer of territory to CRPUD. In 1986, the OPUC approved the sale of utility property to CRPUD. The OPUC also approved PGE's transfer of territory to CRPUD, but on different grounds than PGE requested.[3]

Several years later, CRPUD realized that it could build facilities to serve the Boise Cascade plant for approximately $2 million, a price significantly less than the $31 million purchase price in the settlement agreement. CRPUD thus filed this lawsuit in the United States District Court for the District of Oregon seeking declaratory relief that the damages clause of the agreement violated § 1 of the Sherman Antitrust Act.

## II. Discussion

■ In order successfully to allege a violation of § 1 of the Sherman Antitrust Act,[4] a plaintiff must allege sufficient facts

---

3. PGE requested approval on the ground that such a transfer served the public interest. *See* Or.Rev.Stat. § 758.460 (1999). The OPUC, however, decided that, as a municipality, CRPUD was entitled to an automatic transfer of the service territory along with the utility property it acquired from PGE. *See* Or.Rev. Stat. § 758.470(1) (1999) (explaining that in a condemnation action, a municipality "acquire[s] all of the rights of the person whose property is condemned to serve the territory served by the acquired properties."). Thus, the transfer was a ministerial act by the OPUC.

4. Section 1 of the Sherman Antitrust Act proscribes "[e]very contract, combination ... or

conspiracy, in restraint of trade or commerce...." 15 U.S.C. § 1 (1994). The underlying purpose of the Act is to promote commercial competition by rendering certain anti-competitive practices illegal, *see Sheppard v. Lee*, 929 F.2d 496, 498 (9th Cir.1991), and is aimed at the "prevention of restraints to free competition in business and commercial transactions...." *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). A court's inquiry under Section 1 "is confined to a consideration of impact on competitive conditions," and the court's role is to "form a judgment about the competitive significance of the restraint...." *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 690, 692, 98 S.Ct. 1355,

to demonstrate three elements: (1) the existence of a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains (3) interstate trade or commerce. *See American Ad Management, Inc. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir.1996). Because CRPUD has not sufficiently alleged a restraint of trade or commerce, we hold the § 1 claim must fail as a matter of law.[5]

■ In interpreting the phrase "trade or commerce," the Supreme Court has held that § 1 of the Sherman Antitrust Act reaches only those restraints which are comparable to restraints deemed illegal at common law. *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 495, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). At common law only restraints of trade that involved the "restriction or suppression of commercial competition" were forbidden. *Id.* at 500, 60 S.Ct. 982. Thus, an allegation that "competition has been injured rather than merely competitors" is essential to any § 1 Sherman Antitrust Act Claim. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir.1987). *See also Sheppard v. Lee*, 929 F.2d 496, 499 (9th Cir.1991) (holding plaintiff must allege damage that "in some way involve[s] such competition . . . .") (*citing Klor's, Inc. v. Broadway–Hale Stores, Inc.*, 359 U.S. 207, 213, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959)).

■ CRPUD has failed to accomplish this task. Condemnation of property by a governmental entity is not a business or a commercial transaction. It is not "competition." CRPUD argues that as both parties sell electric power, they are engaged in commerce within the meaning of § 1 of the Sherman Antitrust Act. CRPUD nevertheless has failed to allege some *restraint* on trade or commerce. *See Sheppard*, 929 F.2d at 499 (holding that the mere exchange of money between parties does not automatically implicate trade or

commerce). Consumers will suffer no harm as a result of enforcing the damages clause because the clause itself does not restrain any trade; consumers will still buy electricity and a utility will still produce it. CRPUD seeks to use the antitrust provisions to replace PGE in the monopoly market that sells electric power to Boise Cascade. This it cannot do. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962) (holding that the antitrust laws were enacted for "the protection of competition, not competitors . . . ."). *See also* Herbert Hovenkamp, *Federal Antitrust Policy* 552–553 (1994) ("But if the plaintiff's only claim is of the nature 'I, rather than the defendant, was entitled to be the monopolist of this market,' then the plaintiff is not a victim of antitrust injury.").

The case of *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261 (7th Cir.1984), illustrates this principle. In *Brunswick*, the defendant allegedly borrowed the plaintiff's non-patented technology on a trial basis and then patented the technology. *Id.* at 264. Plaintiff filed an antitrust cause of action in federal court. In dismissing the case, the court pointed out that the market remained just as competitive as before the theft; the question of who owns the patent monopoly is a "matter of indifference" to the antitrust laws. *Id.* at 267. The court also explained that the theft of a valid patent "creates no monopoly power; it merely shifts a lawful monopoly into different hands." *Id.* at 266. The same principle is applicable here. The damages clause does not "create" monopoly power in violation of the antitrust laws, rather its enforcement may simply prevent CRPUD from becoming the approved monopolist for the Boise Cascade plant. As the Seventh Circuit stated, "[t]his has no antitrust significance." *Id.* Thus, although the facts are

---

55 L.Ed.2d 637 (1978). Section 1 does not reach conduct that is "wholly unilateral." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).

**5.** Since we find CRPUD failed to state a claim under the Sherman Antitrust Act, we need not address the state-immunity doctrine on which the district court based its ruling.

different, the legal question in this case— the identity of the state approved monopolist for the Boise Cascade plant—is identical.

This case is not about competition as CRPUD would have it. The only issue in this case is determining which party will be the state-approved monopolist for the Boise Cascade plant. As such, CRPUD has no recourse under the federal antitrust statutes.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.