# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 37236

PINES GRAZING ASSOCIATION, )
INC., an Idaho corporation, )
)
   Plaintiff/Cross-Defendant/Respondent, )
)
v. )
)
FLYING JOSEPH RANCH, LLC, an )
Idaho limited liability company; )
J.C. INVESTMENTS, a )
foreign corporation, )
)
   Defendants/Cross-Claimants/ )
   Appellants. )
)
)

**Idaho Falls, August 2011 Term**

**2011 Opinion No. 120**

**Filed: November 23, 2011**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Hon. Joel E. Tingey, District Judge.

Judgment from jury verdict upholding oral contract to not bid at auction <u>reversed</u> as it is an illegal contract. Attorney fees awarded in trial court <u>vacated</u> and <u>remanded.</u> Jury verdict holding there was no breach of grazing contract, <u>affirmed</u>. Attorney fees awarded to Pines Grazing on appeal.

Cynthia Jane Woolley, Ketchum, argued for appellant.

Thomsen Stephens Law Offices, Idaho Falls, for respondent. James D. Holman argued.

_____
.

BURDICK, Chief Justice

The issues raised on this appeal are: (1) whether the district court abused its discretion in determining that Respondent was the prevailing party for the purpose of awarding attorney fees below; (2) whether the jury verdict dismissing Appellant's counterclaim for breach of a grazing lease was not supported by the evidence; (3) whether the district court erred in declining to grant Appellant's motion for judgment notwithstanding the verdict (JNOV) either on the ground of

1

mutual mistake or in light of a merger clause in a purchase and sale agreement; (4) whether the district court erred in denying Appellant's objection to a jury instruction on promissory estoppel; (5) whether the district court erred in denying Appellant's motion for JNOV on the grounds that the $20,000.00 offered to refrain from bidding constituted an unauthorized brokerage commission; and (6) whether the district court erred in denying Appellant's motion to include its motion for summary judgment in the record.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The lawsuit underlying this appeal stems from a 2005 Real Estate Purchase and Sale Agreement (hereinafter the PSA) entered into between Pines Grazing Association (Pines Grazing) as seller and J.C. Investments as buyer of the nearly 4,000 acre Pines Ranch in the Pahsimeroi Valley for $4 million. Joseph Clark owns Flying Joseph Ranch, LLC and J.C. Investments (collectively hereinafter Flying Joseph). Pines Grazing, now dissolved, was a ranching corporation, whose shareholders in early 2005 were Ben Yates, Judd Whitworth and Steve Bauchman. Mark Brown of Pioneer Associates acted as the agent for both parties and prepared the PSA. Yates signed the PSA on behalf of Pines Grazing, and Clark signed on behalf of J.C. Investments, with closing to be on April 29, 2005.

Prior to closing, the parties learned that approximately 80 acres of what Pines Grazing had previously believed to be a portion of the approximately 4,000 acre Pines Ranch was omitted from the ranch's legal description. Due to this, the parties entered into Addendum 1 to the PSA to adjust the $4 million purchase price to a purchase price of $1,000 per acre with the acreage to be determined upon a later survey of the ranch. The following language was also included in Addendum 1: "Seller agrees to continue negotiation with the State of Idaho on the purchase of approximately 80 acres on the north end of the ranch. This land shall be part of the purchase and will be incorporated into the mortgage amount at the time of the purchase."

Pines Grazing retained attorney Fred Snook to assist with the acquisition of the 80 acres. Fred Snook determined that the 80 acres had been deeded to Lemhi County for failure to pay taxes in the early 1940s and that Lemhi County still owned the land. In light of this, the parties entered into Addendum 2 to the PSA on April 15, 2005, whereby they would proceed with the original closing on the ranch while giving Pines Grazing time to try to acquire the 80 acres from Lemhi County in order to sell the 80 acres to Flying Joseph for $1,000 per acre along with the other ranch land.

On April 15, 2005, the sale of Pines Ranch closed. The parties learned that Lemhi County could not sell the 80 acres privately and could only sell the land at public auction. On June 7, 2005, Lemhi County issued an amended notice of sale, advertising that the 80 acres would be for sale at public auction on August 22, 2005. Pines Grazing sent Snook, Yates and Whitworth to the public auction to bid on the 80 acres for the purpose of completing the sale to Flying Joseph pursuant to the PSA. Clark, who was recovering from surgery, sent Scott Karterman to the auction with a blank check to purchase the 80 acres on Flying Joseph's behalf.

Before the auction began, Karterman encountered Snook, Yates and Whitworth, all of whom were surprised to see the other and so they spoke with each other outside. Karterman informed Yates that he was bidding on the 80 acres on behalf of Flying Joseph for "as high as it takes to get this property"; Yates informed Karterman that Pines Grazing sought to buy the 80 acres and to resell it to Flying Joseph pursuant to the PSA. Karterman called Clark, who then spoke with Yates, and after further discussion, Clark agreed to pay Pines Grazing $20,000 not to bid at the auction. Snook was present and knew of the discussions, and was present through the actual auction itself. Pines Grazing refrained from bidding, and Flying Joseph purchased the 80 acres for $437.50 per acre.

On December 7, 2005, Clark faxed Yates a letter, which provided: "Enclosed please find an Agreement and Full Release of All Claims document for the purchase of the two (2) Lemhi County Parcels. Upon receipt of the signed document, we will issue a check in the amount of $20,000 as agreed." Yates refused to sign the release, because he did not believe that signing the release was part of the oral agreement not to bid which Pines Grazing entered into at the public auction.

On April 16, 2007, Pines Grazing filed the complaint initiating this lawsuit for enforcement of the oral contract. On May 14, 2007, Pines Grazing filed an amended complaint. On August 17, 2007, Flying Joseph moved to dismiss pursuant to I.R.C.P. 12(b), and the district court denied the motion. On September 12, 2007, Pines Grazing submitted a second amended complaint.

In the second amended complaint, Pines Grazing alleged breach of contract and unjust enrichment, arguing that Flying Joseph breached Addendum 2 to the PSA by purchasing the 80 acres at the public auction instead of allowing Pines Grazing to purchase the property and resell it to Flying Joseph. Pines Grazing also alleged that Flying Joseph breached the oral agreement

3

entered into at the public auction by failing to pay Pines Grazing $20,000 for refraining from bidding.

On October 3, 2007, Flying Joseph filed its answer and counterclaim. Flying Joseph admitted that pursuant to the PSA, Pines Grazing was to acquire the 80 acres from Lemhi County and that Flying Joseph was to pay $1,000 per acre for the land. Flying Joseph also admitted that the parties entered into an oral agreement at the public auction whereby Pines Grazing would refrain from bidding. However, Flying Joseph denied any breach of contract and denied liability to Pines Grazing. According to Flying Joseph, it offered to pay Pines Grazing $20,000 both not to bid and not to seek payment pursuant to the PSA for the 80 acres.

Flying Joseph's counterclaim alleged that Pines Grazing breached a grazing lease that the parties entered into on the day that the PSA closed. Addendum 1 to the PSA included the following provision: "Buyer agrees to lease a portion of the ranch back to seller for the grazing season 2005 and 2006. The buyer agrees to lease the grass at a rate [of] $15/ pair, $11/single. This lease to be negotiated prior to closing." On the day of closing of the PSA, a grazing lease was executed.

The case was tried to the jury on July 22, 23, and 24, 2009. The jury returned a special verdict, finding that Flying Joseph did not breach the PSA by purchasing the 80 acres at the public auction, but the jury found that Flying Joseph breached the oral agreement not to bid by failing to pay Pines Grazing the agreed upon $20,000. The jury decided that Flying Joseph was not entitled to recover on its counterclaims concerning the grazing lease. The district court entered a judgment upon the verdict on July 27, 2009.

On August 10, 2009, Flying Joseph submitted its Motion for Judgment Notwithstanding the Verdict and for a New Trial (hereinafter "motion for JNOV"). In the motion for JNOV, Flying Joseph argued that: (1) the oral agreement not to bid violates the statute of frauds; (2) there was insufficient consideration to support the alleged oral agreement not to bid; (3) the oral agreement not to bid is illegal for stifling competition at a public auction; (4) the jury's verdict awarding $20,000 to Pines Grazing constitutes an unauthorized brokerage commission under Idaho law; and (5) Lemhi County never agreed in writing that Pines Grazing should be paid a commission for its services. On October 29, 2009, the district court denied Flying Joseph's motion for JNOV and new trial.

4

Also on October 29, 2009, the district court issued its Memorandum Decision on Motion for Costs, Attorney Fees and Prejudgment Interest. Both parties sought an award of costs and attorney fees, and both parties objected to the other's requested costs and fees. The district court determined that Pines Grazing was the prevailing party and awarded $2,362.40 in costs and $23,500 in attorney fees to Pines Grazing. The district court also awarded Pines Grazing prejudgment interest of $9,409.31 on the $20,000 awarded by the jury. The district court entered an amended judgment in favor of Pines Grazing in the total amount of $55,271.71.

On October 10, 2009, Flying Joseph appealed from the amended judgment.

## II.    ANALYSIS

### A. The oral agreement not to bid at the public auction is an illegal and unenforceable restraint on competition.

In its motion for JNOV, Flying Joseph argued that the oral agreement not to bid is illegal and unenforceable, citing *Hammond v. Alexander*, 31 Idaho 791, 177 P. 400 (1918), for the proposition that where prospective purchasers agree to stifle competition, the agreement is illegal and unenforceable. The district court declined to grant Flying Joseph's motion for JNOV on this ground.

This illegality issue was not raised on appeal; however, illegality can be raised at any stage in litigation, and this Court has the duty to raise the issue of illegality *sua sponte*. *Trees v. Kersey*, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002). As this Court set forth in *Trees*:

> Whether a contract is illegal is a question of law for the court to determine from all the facts and circumstances of each case. An illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy. The general rule is that a contract prohibited by law is illegal and unenforceable. A contract which is made for the purpose of furthering any matter or thing prohibited by statute is void. This rule applies on the ground of public policy to every contract which is founded on a transaction prohibited by statute. The Idaho Court of Appeals has suggested that where a statute intends to prohibit an act, it must be held that its violation is illegal, without regard to the reason of the inhibition or to the ignorance of the parties as to the prohibiting statute.

*Id.* (citations and quotations omitted).

The district court's analysis on illegality was limited to considering this Court's decision in *Hammond* and did not consider the federal or Idaho statutes which prohibit restraints on trade

5

or commerce.[1]  Under federal law, the Sherman Antitrust Act, 15 U.S.C. §§ 1 to 7 (the Sherman Act), prohibits unreasonable restraints on trade and commerce.    Section 1 of the Sherman Act provides, in relevant part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  Idaho law also prohibits unreasonable restraints on trade or commerce. Idaho Code § 48-104 provides: "**Unreasonable restraint of trade or commerce.**  A contract, combination, or conspiracy between two (2) or more persons in unreasonable restraint of Idaho commerce is unlawful."

Generally, "to establish a claim under § 1 of the Sherman Act, the plaintiff must show (1) that there was a contract, combination or conspiracy among two or more entities (2) that unreasonably restrained trade and (3) that the restraint affected interstate commerce."  *Wanachek Mink Ranch v. Alaska Brokerage Int'l, Inc.*, 2009 WL 1342676, at \*2 (W.D.Wash., May 05, 2009) (citing *Columbia River People's Util. Dist. v. Portland GE*, 217 F.3d 1187, 1189–90 (9th Cir. 2000)).    The primary question as to whether there was a contract, combination or conspiracy, is whether the anticompetitive conduct stems from an agreement, tacit or express, as opposed to stemming from an independent decision.  *Id.*  An agreement unreasonably restrains trade if the agreement has anti-competitive effects.  *Id.* at \*3.

---

1        At issue in *Hammond* was whether the State Board of Land Commissioners could void a sale of state land where many prospective purchasers of auction lands devised a scheme whereby they would bid at the auction based upon numbers they drew from a box, without regard to whether they wanted the particular land, and would refrain from bidding against each other.  31 Idaho at 794, 177 P. at 401.  This Court cited *Herndon v. Gibson*, 17 S.E. 145 (S.C. 1893), which provides that "it is a principle ingrafted upon our laws that at public sales fair competition must exist".  *Id.* at 795, 177 P. at 401.  This Court held that the State Board of Land Commissioners could void the sale and explained:

> Competition is an element of each offer and bid, and while all agreements among prospective bidders do not operate to vitiate a sale, if the purpose in so agreeing is to stifle competition, and if it causes the property offered to be awarded to a bidder, or bidders, for less than would have otherwise been offered, the vendor may avoid sale.

*Id.* (citation omitted).

Turning to the case at hand, the district court determined that an agreement among prospective bidders is voidable but not void, and such an agreement is to be voided if both (1) the purpose of the agreement is stifle competition and (2) the agreement causes the property offered to be awarded to a bidder for less than it would have been offered for.  On the first element, the district court found: "While some limiting of competition may have been a by-product of the agreement, the evidence does not establish that the primary purpose of the agreement was to stifle competition."  Rather, the district court found that the testimony showed that the purpose of Flying Joseph's offer "was to resolve all issues between the Parties regarding the prior land sale and the remaining 80 acres."  On the second element, the district court found that the evidence failed to establish that the property was awarded to Flying Joseph for less than it otherwise would have offered, noting that the oral agreement did not preclude third parties from bidding, third parties did bid, at the time of the agreement there was no guarantee that Flying Joseph would be the successful bidder, and the parties testified that they thought the property would sell for less than it did (believing it would sell for $300 to $400 per acre; whereas it sold for $437.50).

6

The federal district court for the District of Wyoming succinctly set forth the law developed under Section 1 of the Sherman Act specifically concerning bid rigging as follows:

> Despite this broad language [in 15 U.S.C. § 1], the Sherman Act has been read *ab initio* to prohibit only those restraints on trade which are unreasonable. *U.S. v. Reicher*, 983 F.2d 168, 170 (10th Cir.1992), cert. denied 511 U.S. 1071, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994), citing *Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918). However, in addition to the reasonableness rule, the courts have identified certain conduct which because of its "pernicious effect on competition and lack of any redeeming virtue" is considered [to] be a *per se* violation of the Antitrust Act. *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Bid rigging is one such per se violation. *Reicher*, 983 F.2d at 170.
>
> Bid rigging is defined as "any agreement between competitors pursuant to which contract offers are to be submitted to or withheld from a third party...." *U.S. v. Mobile Materials, Inc.*, 881 F.2d 866, 869 (10th Cir.1989), cert. denied 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990).

*Love v. Basque Cartel*, 873 F.Supp. 563, 576 (D.Wyo. 1995).

The United States Supreme Court has deemed bid rigging activity as presumed to be an unreasonable restraint on trade and illegal because of its 'pernicious effect on competition and lack of any redeeming virtue." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). "[C]ourts have repeatedly held that a simple agreement not to bid is itself a per se antitrust violation, even in the absence of prior price fixing." *United States v. Seville Indus. Mach. Corp.*, 696 F.Supp. 986, 989 (D.N.J. 1988). *See United States v. Portsmouth Paving*, 694 F.2d 312, 325 (4th Cir.1982) ("[a]ny agreement between competitors pursuant to which contract offers are to be submitted to or withheld from a third party constitutes bid rigging per se violative of 15 U.S.C. § 1"); *Swift & Co. v. United States*, 196 U.S. 375, 400, 25 S.Ct. 276, 281, 49 L.Ed. 518 (1905) ("[t]he defendants cannot be ordered to compete, but they properly can be forbidden to give directions or to make agreements not to compete").

Turning to the case at hand, while the parties dispute some of the details of the oral agreement not to bid, they agree that Pines Grazing promised to refrain from bidding at the public auction in exchange for Flying Joseph's promise to pay $20,000 to Pines Grazing. The parties also agree that they entered into the agreement not to bid in order to prevent them from bidding against each other out of the concern that doing so would drive up the price of the 80 acres. We hold that the oral agreement not to bid constitutes illegal bid rigging under both I.C. § 48-104 and Section 1 of the Sherman Act. Accordingly, we refuse to enforce the oral agreement

7

not to bid, and we overturn the jury verdict awarding Pines Grazing $20,000 for Flying Joseph's breach of the agreement not to bid. This holding leaves the parties as they are with respect to the oral agreement not to bid.

In light of this holding, the following issues raised on appeal need not be addressed: (1) whether the district court erred in declining to grant Flying Joseph's motion for JNOV, because the agreement not to bid was unenforceable due to mutual mistake; (2) whether the district court erred in declining to grant Flying Joseph's motion for JNOV, because the oral agreement not to bid should not have been considered by the jury in light of the PSA's merger clause; (3) whether the district court erred in declining to grant Flying Joseph's motion for JNOV, because the $20,000 jury verdict awarded for refraining from bidding constitutes an unauthorized brokerage commission under Idaho law; (4) whether the district court erred in denying Flying Joseph's objection to Jury Instruction Number 40.1 on promissory estoppel concerning the enforceability of the oral agreement not to bid; and (5) whether the district court erred in denying Flying Joseph's motion to include in the record its motion for summary judgment, which raised below the issues of mutual mistake and merger concerning the oral agreement not to bid.

**B. Whether the jury's finding that Pines Grazing did not breach the grazing lease was supported by substantial and competent evidence.**

One of Flying Joseph's counterclaims alleged that Pines Grazing materially breached the grazing lease by failing to perform all obligations of the lease "including but not limited to, repair maintenance in good working order of all wells, pivots, pumps and irrigation mainline." The jury found that there was no such breach of contract.

On appeal, Flying Joseph argues that the jury's verdict is not supported by substantial and competent evidence. Specifically, Flying Joseph argues that the facts at trial show that Pines Grazing was the lessee of the grazing lease and that Pines Grazing breached the grazing lease by failing to properly maintain the improvements and by subletting without written consent. If Pines Grazing was not the lessee of the grazing lease, then Flying Joseph argues that Pines Grazing breached the PSA by failing to enter into a grazing lease.

Pines Grazing argues that Flying Joseph raises the issue of mistake concerning the proper party to the grazing lease for the first time on appeal. Pines Grazing also argues that the grazing lease unambiguously names Yates and Whitworth, not Pines Grazing, as lessees. Furthermore, according to Pines Grazing, the PSA provision contemplating a grazing lease between Flying Joseph and Pines Grazing is an unenforceable agreement to agree. Pines Grazing next argues

8

that even if Pines Grazing was the lessee under the grazing lease, the jury had sufficient evidence to find that the lessee properly maintained the leased premises, and as to the improper assignment of the lease, Pines Grazing argues that the remedy is limited to Flying Joseph's right to have the assignment voided, which it never did during the duration of the lease; whereas in its Reply Brief, Flying Joseph argues that it is entitled to damages in the amount by which Pines Grazing was unjustly enriched (allegedly over $26,000).

    1.   Whether Flying Joseph raises this issue for the first time on appeal.

"This court will not address issues not raised in the lower court." *Idaho Dairymen's Ass'n v. Gooding Cnty.*, 148 Idaho 653, 660, 227 P.3d 907, 914 (2010). According to Pines Grazing, Flying Joseph never argued below that there was a mistake concerning the proper parties to the grazing lease and never asked that the grazing lease be reformed or rescinded. Flying Joseph argues that the issue concerning the proper lessee was raised at trial, because in closing arguments Flying Joseph's counsel explained that despite the language in the grazing lease, every witness except for Yates testified that they intended Pines Grazing to be the lessee.

Flying Joseph asserted a counterclaim alleging that Pines Grazing breached the grazing lease. During the trial, it became apparent that there was disagreement as to whether the lessee under the grazing lease was Pines Grazing or was Yates and Whitworth as individuals. Despite this dispute at trial, it does not appear that Flying Joseph argued below that if Pines Grazing was not the lessee under the grazing lease, then Pines Grazing breached the PSA by failing to enter into a grazing lease.[2] Therefore, to the extent that Flying Joseph argues on appeal that Pines Grazing breached the PSA by failing to enter into a grazing lease, we decline to consider that issue, because there was no adverse ruling on this issue. *Garner v. Bartschi,* 139 Idaho 430, 436, 80 P.3d 1031, 1037 (2003).

---

[2] Also of note, there was no motion to amend the pleadings to conform them to the evidence pursuant to I.R.C.P. 15(b) filed at the end of the trial. Rule 15(b) states:

> When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

I.R.C.P. 15(b).

However, Flying Joseph did argue below that Pines Grazing was the lessee and breached the grazing lease, and the jury found that Flying Joseph was not entitled to recover for these alleged breaches of contract. Therefore, we must consider whether the jury's finding that Pines Grazing did not breach the grazing lease is supported by substantial and competent evidence.

2. <u>Whether the evidence supports the jury's finding that Pines Grazing did not breach the Grazing Lease.</u>

"This Court will not overturn a jury verdict if it is supported by substantial and competent evidence". *Vanderford Co. v. Knudson*, 144 Idaho 547, 552, 165 P.3d 261, 266, (2007). "A jury verdict must be upheld if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury." *Id.* "When reviewing a jury verdict on appeal the evidence adduced at trial is construed in a light most favorable to the party who prevailed at trial." *Garrett Freightlines, Inc. v. Bannock Paving Co.*, 112 Idaho 722, 726, 735 P.3d 1033, 1037 (1987).

Where a contract is ambiguous, the intent of the interpretation of the contract is a factual issue which focuses on the intent of the parties. *Page v. Pasquali*, 150 Idaho 150, __, 244 P.3d 1236, 1238 (2010). While the grazing lease names Yates and Whitworth as the tenants, Yates (President of Pines Grazing), signed the grazing lease as "Ben Yates, President". Furthermore, the grazing lease was executed on the day of closing of the PSA, and Addendum 1 of the PSA included a provision whereby Flying Joseph agreed to lease a portion of the ranch back to Pines Grazing for the 2005 and 2006 grazing seasons. Clark testified that he overlooked the name of the lessee in the grazing lease and that he intended to lease the ranch to Pines Grazing. Yates first testified that he did not personally enter into the lease but that he "approved it"; however, he later testified that he signed the lease as a tenant. Pines Grazing paid the obligations and expenses associated with the grazing lease, Pines Grazing used its operating line of credit with Zions Bank for expenses for the grazing lease and Pines Grazing dissolved immediately after the end of the lease. We hold that there is substantial and competent evidence to support a jury finding that Pines Grazing was not the lessee and, therefore, could not breach the grazing lease.

Flying Joseph asserts, however, that it is entitled to an award based on unjust enrichment equal to the amount of the sublease ($26,250). The three elements of a claim for unjust enrichment are: "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment

10

to the plaintiff for the value thereof." *Vanderford Co. v. Knudson*, 144 Idaho 547, 558, 165 P.3d 261, 272 (2007). Flying Joseph did not confer any benefit on Pines Grazing. The benefit to Pines Grazing was from Bauchman in the form of rent. Thus, we uphold the jury's finding that Flying Joseph is not entitled to recover for breaching the grazing lease.

**C. Attorney fees.**

1. Attorney fees on appeal.

Flying Joseph requests reasonable costs and attorney fees on appeal pursuant to the PSA, the grazing lease, I.R.C.P. 54 and 56 and I.C. §§ 12-120 and 12-121. Pines Grazing requests attorney fees on appeal pursuant to I.C. § 12-120(3), pursuant to which the prevailing party is allowed reasonable attorney fees in any civil action to recover on a commercial transaction.

Because we hold that the oral agreement not to bid is illegal and unenforceable, neither party is entitled to attorney fees with respect to the issues related to the oral agreement not to bid. *See Trees*, 138 Idaho at 12–13, 56 P.3d at 774–75 (attorney fees under I.C. § 12-120(3) are not appropriate when the commercial transaction is found to be illegal). However, with respect to the grazing lease issue, we uphold the jury's finding that Pines Grazing did not breach the grazing lease, and thus, Pines Grazing is the prevailing party and entitled to attorney fees on appeal with respect to the grazing lease issue.

2. Attorney fees before the district court.

Appellants argue that the district court abused its discretion in awarding attorney fees to Pines Grazing pursuant to I.C. 12-120(3) because Pines Grazing was not the prevailing party.[3]

In light of our holding that an oral agreement not to bid is illegal and unenforceable, and because attorney fees are not appropriate for issues related to an illegal contract, neither party is entitled to attorney fees below on any issue concerning the oral agreement not to bid at the public auction. *See Taylor v. AIA Services Corp.,* 151 Idaho 52, ___, 261 P.3d 829, 851 (2011). The remaining issue is the issue of breach of the grazing lease. Pines Grazing prevailed on the grazing lease issue both below and on appeal and is, thus, entitled to such attorney fees below pursuant to I.C. § 12-120(3).

---

[3] Appellants also argue in their Reply Brief that the district court erred in awarding Plaintiff costs without engaging in a claim-by-claim cost analysis as it should have done pursuant to I.R.C.P. 54(d)(1)(B). However, Appellants' Opening Brief does not challenge the award of costs. "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). Therefore, we decline to consider whether the district court erred in its award of costs.

### III. CONCLUSION

We refuse to enforce the oral agreement not to bid at the public auction, because it is an illegal contract in violation of the Sherman Act and I.C. § 48-104. As such, the parties are left as they are with respect to the oral agreement not to bid, and neither party is entitled to attorney fees on appeal or in the district court with respect to all issues related to the oral agreement not to bid. We uphold the jury's finding that Pines Grazing did not breach the grazing lease. We remand to the district court for a determination of fees pursuant to the grazing lease pursuant to I.C. § 12-120(3). We award attorney fees to Pines Grazing for the appeal pursuant to I.C. § 12-120(3). Because we decline to enforce the oral agreement not to bid at the public auction, we need not reach the remaining issues raised by Flying Joseph on appeal.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**